*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

September 7, 2018

**By CM/ECF**

The Honorable William H. Pauley, III
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:    <u>United States v. Daugerdas</u>, 09 Cr. 581 (WHP)
>        <u>Daugerdas v. United States</u>, 18 CV 152 (WHP)

Dear Judge Pauley:

The United States respectfully submits this letter brief in response to petitioner Paul M. Daugerdas's filing of a petition for writ of *audita querela* ("the Petition"), through which Daugerdas attempts to challenge the forfeiture and restitution orders entered in connection with his conviction.  As we demonstrate below, a writ of audita querela ("the Writ") provides no avenue for an attack on the restitution and forfeiture orders because Daugerdas procedurally defaulted those arguments by failing to raise them on direct appeal.  Moreover, notwithstanding the retroactive application of the holding in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), the forfeiture order, which has long been final, is not susceptible to attack at this stage of the case.  Finally, *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), provides no support for Daugerdas's attack on the restitution order because he was validly convicted of conspiracy and mail fraud offenses that served as the bases for the full amount of the restitution order.

    **A.  Background**

Daugerdas was convicted at his re-trial in October 2013 and sentenced in June 2014 to a fifteen-year term of incarceration.  As part of Daugerdas's sentence, this Court ordered Daugerdas to pay restitution in the amount of $371,006,397, which represented the loss suffered by the IRS as a result of the multi-year tax fraud conspiracy and mail fraud scheme of which Daugerdas was convicted.  *United States v. Daugerdas*, 837 F.3d 212, 221 (2d Cir. 2016).  The Court also ordered Daugerdas to forfeit $164,737,500, *id.,* which represented the aggregate amount of unlawful proceeds – in the form of tax shelter fees – paid to Daugerdas and his conspirators.  Daugerdas's

portion of those unlawful fees was over $95 million. *See* Govt. Sentencing Memo, at 9 (chart listing fees to conspirators), ECF #821. The Second Circuit affirmed Daugerdas's convictions and sentence on September 21, 2016. *United States v. Daugerdas*, 837 F.3d at 217.

Significantly, in connection with his direct appeal, Daugerdas raised no challenge to the joint-and-several nature of the forfeiture order. Instead, the only challenge to the forfeiture was an alleged deficiency in the Government's tracing of the "proceeds" obtained by Daugerdas. *Id.* at 221 (listing specific issues raised on appeal). As a result of Daugerdas's failure to challenge the scope of the forfeiture order, the Second Circuit had no occasion to pass on a *Honeycutt*-type argument, even though such an argument was available to Daugerdas at the time of his appeal. *See United States v. Cano-Flores,* 796 F.3d 83, 91 (D.C. Cir. Aug. 7, 2015) (refusing to adopt joint-and-several liability forfeiture liability).

### B. The Petition

Daugerdas raises three arguments in the Petition. First, he maintains that the Supreme Court's opinion in *Honeycutt* renders unlawful the joint-and-several forfeiture judgment entered at sentencing. (Pet. at 4-5.) Second, Daugerdas contends that the forfeiture was unlawful because the underlying offenses that served as forfeiture predicates – conspiracy and mail fraud – were not properly alleged and proven at trial. *Id.* at 6-12. Finally, Daugerdas claims that the Supreme Court's decision in *Nelson* warrants vacatur of the forfeiture and restitution determinations. *Id.* at 13-14. Each of these arguments is meritless.

### C. Argument

#### 1. Daugerdas's *Honeycutt* Argument is Defaulted and Otherwise Barred

In *Honeycutt v. United States*, the Supreme Court held that, under the criminal forfeiture statute governing narcotics offenses, 21 U.S.C. § 853(a)(l), forfeiture could not be awarded against the defendant on a theory of joint and several liability for proceeds that the defendant did not personally obtain. Specifically, the Court held that, under Section 853(a)(1), forfeiture "is limited to property the defendant himself actually acquired as the result of the crime." 137 S. Ct. at 1635.

The Government concedes that, by construing 21 U.S.C. § 853(a) to limit criminal forfeiture to the tainted proceeds "obtained, directly or indirectly" by the individual defendant, the Supreme Court in *Honeycutt* announced a substantive rule that has retroactive effect. *See Welch v. United States*, l36 S. Ct. 1257, 1264 (2016) ("[n]ew substantive rules generally apply retroactively" on collateral review). However, just because a new rule has retroactive effect does not automatically confer a remedy. Although a defendant may raise *Honeycutt* on direct appeal, *see Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), or even on appeal from an order forfeiting

substitute assets, a defendant may not challenge a criminal forfeiture order once the judgment becomes final.

The reason for this rule is plain: a district court lacks authority to alter the terms of a criminal forfeiture order after the direct appeal has become final. *See United States v Pelullo*, l78 F.3d 196, 202 (3d Cir. 1999) (preliminary order is final as to the defendant and divests him of any interest he had in the property, including property forfeited as a substitute asset); *United States v. De Los Santos,* 260 F.3d 446, 448 (5th Cir. 2001) (although such an order of forfeiture is preliminary as to third parties, it is final as to the defendant at the time of sentencing); *United States v. Lester*, 2008 WL 732897, *2 (D. Kan. 2008) (once order of forfeiture became final as to defendant at sentencing, his only remedy was direct appeal; he could no longer make objections to the forfeiture in the district court); *United States v. Hicks*, 2005 WL 2656594, *2 (W.D. Wash. 2005) (because forfeiture is part of sentencing, it may only be challenged on direct appeal; once the time for appeal has expired, the forfeiture is final and cannot be revised by the district court).

A defendant may challenge a forfeiture only by appealing that order. *United States v. Noyes*, 557 Fed. App'x 125,127 (3d Cir. 2014) (motion challenging forfeiture order, cloaked as a Rule 41(g) motion, was untimely because challenge was not raised on direct appeal); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007) ("[A] criminal forfeiture is part of the defendant's sentence and must be challenged on direct appeal or not at all").  Here, Daugerdas filed a direct appeal and advanced a "tracing of proceeds" argument in connection with his challenge to the forfeiture order.  Significantly, however, Daugerdas failed to raise a *Honeycutt* claim challenging the joint-and-several nature of the forfeiture order, despite the fact that such an argument was "available" to him.  *See United States v. Cano-Flores,* 796 F.3d at 91 (rejecting Government's "joint-and-several" argument on Aug. 7, 2015, over two months prior to the October 22, 2015 argument of Daugerdas's Second Circuit appeal).  Moreover, although the Supreme Court's decision in *Honeycutt* was announced in June 2017, Daugerdas did not seek to invoke that decision in his then-pending certiorari petition (which was ultimately denied in October 2017) or otherwise before this Court.

In sum, Daugerdas had a full opportunity to raise the *Honeycutt* issue, yet failed to do so. Accordingly, while the decision in *Honeycutt* may be applied retroactively, there is no basis to vacate a forfeiture judgment once it becomes final – as it did in this case.

Cloaking these arguments in a petition for writ of *audita querela* does not change this result.  Under the common law Writ, a defendant may obtain relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment.  *United States v. Bullock*, 666 Fed. App'x 117, 118 (3d Cir. 2016).  While the Writ has been abolished in civil cases, courts have held that the Writ may apply in limited circumstances "in criminal cases to the extent that it fills in gaps in the current system of post-conviction relief."  *Massey v. United*

3

*States*, 58l F.3d 172, 174 (3d Cir. 2009); *United States v. Chandler*, 183 F. Supp. 3d 1158, 1162 (N.D. Ala. 2016) (explaining history of *audita querela*; court also noted that "courts of appeals have expressed varying levels of skepticism about whether *audita querela* is available at all in criminal proceedings"); *United States v. Fischer*, 2014 WL 5473586, *3 (D. Ore. 2014) (if *audita querela* has survived, courts agree that its use is limited to very narrow circumstances)

While the Second Circuit does not appear to have had occasion to grant *audita querela* relief, much less in a situation like that presented here – that is, where a defendant is challenging only an aspect of his sentence and not the underlying conviction, the Second Circuit has indicated that a writ of *audita querela* "might be deemed available if [its] existence were necessary to avoid serious questions as to the constitutional validity of both § 2255 and § 2244." *Triestman v. United States,* 124 F.3d 361, 380 n.24 (2d Cir. 1997). Stated otherwise, to the extent the Writ is available at all, it may be employed only where there exists no statutory or other mechanism to challenge a fundamental infirmity in the underlying conviction, which has been made manifest as a result of a previously unavailable statutory interpretation. *In re Dorsainvil,* 119 F.3d 245, 248 (3d Cir.1997). Indeed, as the Second Circuit has emphasized, the "Writ of Audita Querela is an extraordinary remedy and is generally available only if the absence of any avenue of collateral attack would raise serious constitutional questions about the laws limiting those avenues." *United States v. Quintieri*, 547 Fed. App'x 32, 33 (2d Cir. 2013) (amended Dec. 2, 2013).

Thus, the court's authority to issue writs like *coram nobis* and *audita querela* is limited in scope and it is recognized that "[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1946). "[T]he petitioner must show that something like an intervening change in law, rather than simply argue that the collateral consequences of the conviction have turned out to be unduly harsh." *Rawlins v. Kansas*, 714 F.3d 1189, 1193 (10th Cir. 2013). However, while the intervening change in law "has to have rendered an originally correct judgment infirm, it must do more than simply tip the scales of equity." *United States v. Spring*, 2015 WL 1432637, *3 (D. Utah 2015). In sum, the Writ of *audita querela* is an extraordinary remedy. It is justified only where there: (1) has been an intervening change of law that renders a conviction unjust; and (2) is no other avenue of relief available to fill the void created by an intervening change of law. Because the Writ is such an "extraordinary remedy," it should be issued only in compelling circumstances where "serious constitutional questions" exist about the laws limiting avenues for collateral relief.

Here, while *Honeycutt* arguably presents an intervening change in the law regarding the imposition of forfeiture judgments, Daugerdas cannot meet the first prong of this test and show that *Honeycutt* rendered his underlying conviction unjust. That is because Daugerdas had the opportunity to contest the forfeiture money judgment at sentencing and on direct appeal, given the then-existing Circuit split on the issue whether forfeiture judgments could properly be joint and

4

several.  Moreover, as noted above, *Honeycutt* was announced while Daugerdas's petition for certiorari was pending, and he thus could have made an application to raise that issue in the Supreme Court.  His failure to avail himself of these available remedies dooms his Petition.  *See Engle v. Isaac,* 456 U.S. 107, 134 (1982) (where basis of claim "is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default"); *United States v. George*, 676 F.3d 249, 254 (1st Cir. 2012) (to proceed under common law writ *coram nobis* petitioner must, among other things, "explain his failure to seek earlier relief from the judgment") (collecting cases).  *See also United States v. Iaconi*, 592 F. Supp. 2d 216, 221 (D. Mass. 2009) (noting that Seventh and Eleventh Circuits had held that, under *coram nobis*, alleged errors in both fines and restitution orders are not "fundamental" to the underlying conviction; holding same reasoning applicable to *audita querela*).

### 2. Daugerdas's Challenge to the Forfeiture Predicates is Meritless

Daugerdas maintains next that the conspiracy and mail fraud charges were not adequately pleaded and proven and thus could not properly serve as predicates for the forfeiture order.  This argument requires little discussion because it is a rehash of the arguments advanced in Daugerdas's habeas petition.  As we explained in our memorandum in response (at pages 20-26), (a) the conspiracy charge was timely because it did not even need to make use of the 10-year statute, given that the S3 Indictment, returned in March 2010, alleged acts continuing into October 2005 – and thus was within the general five-year statute; (b) any alleged defect in failing to allege the "affecting" of a financial institution was not fatal, given Daugerdas's notice at the second trial that the Government intended to prove the "affecting" of Deutsche Bank and Bank One (citing *Cotton v. United States*, 535 U.S. 625, 633 (2002) (omission of fact from an indictment that enhances a sentence does not require reversal of conviction where the proof of that fact is overwhelming and "essentially uncontroverted"); *United States v. Nkansah*, 699 F.3d 743, 752 (2d Cir. 2012) (omission of interstate commerce element from indictment did not require reversal); (c) in any event, the Wartime Suspension of Limitations Act suspended the running of the statute of limitations for the conspiracy and mail fraud offenses; (d) the mail fraud count properly alleged, consistent with the statute, the use of the mails as part of the scheme; and (e) the Government's "mailings" bill of particulars adequately advised the defendants of the specific mailings the Government would seek to prove.

To the extent that Daugerdas additionally argues that the jury was not instructed regarding the "affecting" element and the mailing element of the mail fraud charge, that argument is belied by the record.  Trial II Tr. 7690-91 (instructing jury on mailing and "affecting" elements, and noting that the parties had stipulated that the tax shelters "affected" the banks).

Finally, to the extent that Daugerdas has attempted to advance an ineffective assistance argument in his Petition (Pet. at 9), that attempt should be rejected.  Such as claim cannot be raised

via a writ of *audita querela* because there is a separate statutory avenue for advancing those type of claims – *viz.*, a Section 2255 petition. In fact, Daugerdas has raised that very claim in his habeas filings. He should therefore not be permitted to raise them again here.

### 3. Daugerdas's reliance on *Nelson* is Misplaced

We agree with Daugerdas's contention that the Supreme Court's *Nelson* opinion bars the imposition of fines and penalties when the underlying convictions giving rise to those monetary punishments are reversed or vacated. (Pet. at 13). But *Nelson* provides no aid to Daugerdas because his conspiracy and mail fraud convictions were affirmed and thus provide sound support for the restitution and forfeiture orders.

To the extent that Daugerdas contends relatedly that his restitution and forfeiture orders are infirm because they resulted from judicial fact-finding, that argument is foreclosed by *United States v. Reifler*, 446 F.3d 65, 118 (2d Cir. 2006), which held that judicial fact-finding to determine the appropriate amount of restitution under a statute that does not prescribe a maximum – like the MVRA and VWPA – does not implicate a defendant's Sixth Amendment rights. A similar rule applies to forfeiture. *United States v. Fruchter,* 411 F.3d 377, 380-83 (2d Cir. 2005) (rejecting claims that proof beyond a reasonable doubt is required in forfeiture proceedings, and noting that "*Apprendi* has no effect on criminal forfeiture proceedings").

### 4. Conclusion

The Petition should be dismissed.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney

By: //s// Stanley J. Okula, Jr.
    Stanley J. Okula Jr.
    Stan.Okula@usdoj.gov
    Nanette L. Davis
    Nanette.L.Davis@usdoj.gov
    Special Assistant U.S. Attorneys
    (212) 637-1585/(202) 514-2839

cc:    Paul M. Daugerdas (via mail)